IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES R. SMITH, | ) | |
| | ) | |
|     Movant, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-1354 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Trauger |
| | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION

James R. Smith, a federal prisoner proceeding *pro se*, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, asserting claims based on the ineffective assistance of counsel and prosecutorial misconduct, among others. (ECF No. 1.) The United States filed its response in opposition to the motion, along with the affidavit of Smith's former counsel, Peter Strianse. The movant filed a reply brief and a motion to expand the record (ECF No. 22), along with various affidavits, letters and documents the movant seeks to include in the record.

The court will grant the motion to expand the record. In ruling on the § 2255 motion, the court has considered the documents submitted by the movant as well as the underlying record and the briefs of both parties. The court finds, for the reasons set forth herein, that an evidentiary hearing is not required and that the movant is not entitled to relief.

## I.    Procedural Background

On January 5, 2011, James Smith was indicted by a federal grand jury on charges of unlawfully, knowingly and intentionally manufacturing 1000 or more marijuana plants and unlawfully possessing with intent to distribute 1000 or more marijuana plants, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). *United States v. Smith*, No. 3:11-cr-0003 (M.D. Tenn.) (Indictment, ECF No. 1).

A detention hearing was conducted on March 8, 2011, at which two of the movant's family members, Heather Tittle (his brother's girlfriend) and Jennifer Smith (his nephew's now ex-wife), testified that they were afraid of the defendant and would be compelled to move away from their homes if he was not detained pending trial. (Case No. 3:11-cr-0003, Detention Order, ECF No. 11; Detention Hr'g Tr., ECF

No. 87.) Magistrate Judge Juliet Griffin granted the government's motion for detention, largely based upon her finding that Mr. Smith had, over the preceding several months, "relentlessly approached family members in a combative, aggressive, and drunken manner" and that, "even after the government contacted defendant's counsel about his threats, the defendant continued to threaten his brother and girlfriend and sent his son to interrogate his brother." (Detention Order at 10.) Counsel for Mr. Smith filed a motion for reconsideration of the detention order the following summer. Another hearing was conducted on that motion, but that motion too was denied. (Case No. 3:11-cr-0003, ECF No. 70.)

On July 27, 2012, the court entered an order granting the movant's petition to enter a plea of guilty, which was subject to a plea agreement with the United States. (Case No. 3:11-cr-0003, ECF No. 74, at 7.) Pursuant to the plea agreement, Smith pleaded guilty to a lesser included offense in Count 2 of the indictment, to unlawfully, knowingly and intentionally possessing with intent to distribute 100 or more marijuana plants. The United States agreed to dismiss Count 1 of the indictment after sentencing on Count 2. (Case No. 3:11-cr-0003, Plea Agreement ¶ 3, ECF No. 74, at 9.)

The plea agreement did not include any agreement regarding sentencing. In the plea petition, the movant noted that he had been advised by his attorney that the guideline calculation in his case

> should be **12 to 18 months *if* the so-called 'safety-valve,' U.S.S.G. § 5C1.2, applies to Mr. Smith's case; or *if* Mr. Smith does *not* qualify for the 'safety-valve,' he faces a mandatory minimum punishment of 60 months and a guideline calculation of 30 to 37 months, assuming aggravating adjustments for obstruction and leadership with full credit for acceptance of responsibility. The minimum mandatory punishment of 60 months would trump the alternative 30 to 37 month calculation.**

(*Id.* at 2 (bold and italicized text in original).) The plea agreement likewise specified that the offense to which the movant was pleading guilty carried a mandatory minimum sentence of five years and maximum of forty years of incarceration, and a minimum of four years of supervised release. (*Id.* at 9.)

During the plea hearing, the court carefully explained to Mr. Smith that the statutory mandatory minimum sentence for the conduct to which he was pleading guilty was a 5-year prison term and that there was no agreement between the government and him regarding "relevant conduct, enhancements, total offense level, or whether [he] would qualify for what we call the safety valve." (Case No. 3:11-cr-0003, Plea Hr'g Tr., at 11:1–3.) Mr. Smith expressly confirmed that he understood that there was no agreement regarding this issues. (*Id.* at 9.) The court explained that those issues, including whether the

safety valve applied, would be determined by the court. The court stated: "And Mr. Strianse [defense counsel], I know, has given you some estimates about what your guideline range might be, whether or not you get the safety value, and so forth. You understand that those are predictions, not promises, and they are not binding on the Court or the prosecution or the probation office." (*Id.* at 11:18–23.) Mr. Smith responded, "Yes, ma'am, I understand that." (*Id.* at 11:24.) He further confirmed that he understood that, if his attorney's predictions about what his sentence might be were incorrect, he would not be permitted to withdraw his guilty plea. (*Id.* at 12:5–10.)

In addition, the following colloquy took place between Mr. Smith and the court:

THE COURT:   Has anyone promised you or suggested to you what sentence I will give you in order to get you to plead guilty?

MR. SMITH:   No, ma'am.

THE COURT:   Has anyone put any kind of pressure on you, psychological or physical, to get you to plead guilty?

MR. SMITH:   No, ma'am.

. . . .

THE COURT:   Is your mind clear and you feel like you know what you are doing?

MR. SMITH:   Yes, ma'am, it is.

(*Id.* at 17:1–21.)

The court inquired of the prosecuting attorney, in open court and in the presence of Mr. Smith, whether she anticipated that Mr. Smith would qualify for the safety valve. She responded that this was "an area of contention" and that the United States did not believe Mr. Smith was entitled to the safety valve. (*Id.* at 24:12–18.)

After the plea was accepted but prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") (Case No. 3:11-cr-0003, ECF No. 99), and both parties submitted written sentencing positions. As the plea petition anticipated, the PSR found that the recommended guideline range was 30 to 37 months, which was trumped by the 5-year mandatory minimum in 21 U.S.C. § 841(b)(1)(B). Mr. Smith, through counsel, objected to two enhancements applied in the PSR and asserted that he was entitled to the benefit of the safety-valve provision at U.S.S.G. § 5C1.2. The United States raised no objections to the PSR, but it refuted Smith's contention that he was

entitled to application of the safety-valve provision.

The sentencing hearing was conducted before the undersigned on December 10, 2012, during which the court denied the defendant's sealed motion for a mitigated sentence and variance below the sentencing guidelines and found that the safety-valve provision did not apply. Mr. Smith was sentenced to the mandatory minimum both for prison time and probation: 60 months of incarceration and 4 years of supervised release.

Mr. Smith, through counsel, promptly filed a notice of appeal. The appeal was later dismissed for failure to prosecute. The present motion under 28 U.S.C. § 2255 was filed within the one-year statute of limitations. 28 U.S.C. § 2255(f).

## II.     The Current Motion

The movant asserts that his sentence should be vacated on the following grounds:

(1)     The guilty plea was not knowing and voluntary.

(2)     Defense counsel was constitutionally ineffective, based on the following allegations:

(i)     Counsel failed to move for application of the safety-valve provision of U.S.S.G. § 5C1.2.

(ii)     Defense counsel did not receive the United States' witness list or exhibits until just before the sentencing, but counsel failed to move for a continuance of the sentencing hearing in order to have time to investigate the witnesses and exhibits on the United States' witness and exhibits lists and to "subpoena the proper witnesses/evidence to negate their veracity." (2255 Motion, ECF No. 1, at 5.)

(iii)     Counsel failed to object during the sentencing hearing to the government's introduction of hearsay testimony in the form of unsigned letters.

(iv)     Counsel failed to object to the prosecution's violation of the plea agreement.

(v)     Counsel failed to object to the sentencing enhancements found in the PSR.

(vi)     Counsel failed to correctly inform Mr. Smith what his sentence and the other collateral consequences of pleading guilty would be.

(3)     The prosecutor engaged in misconduct insofar as she (i) failed to disclose witnesses until the day of the sentencing; (ii) failed to correct the quantity of marijuana plants found on Smith's property;

and (iii) failed to disclose four unsigned and/or undated defamatory letters until just before sentencing, three of which were entered into evidence for enhancement purposes.

        (4)     The court abused its discretion at sentencing, insofar as it permitted prosecution witnesses to testify for enhancement purposes but refused to allow defense witnesses to testify for mitigation purposes and admitted into evidence three unsigned hearsay letters without ascertaining their veracity.

        (5)     "Failure to receive downward departure for substantial assistance petitioner provided to the government." (2255 Motion, ECF No. 1, at 10.)

## III.    Standard of Review

This court must vacate and set aside a movant's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Thus, to prevail upon a motion for habeas relief under 28 U.S.C. § 2255, a prisoner must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) the proceedings were affected by an error of fact or law that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A prisoner must sustain his allegations by a preponderance of the evidence.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the court is to determine after a review of the answer and the record of the underlying criminal case whether an evidentiary hearing is required. In addition, where the same judge considering the § 2255 motion also conducted the underlying criminal proceedings, she may rely on her own recollections of those proceedings. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir.1996). If the motion to vacate, the answer and the underlying record show conclusively that movant is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). Further, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo*, 178 F.3d at 782 (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th

Cir. 1995)).

## III.    DISCUSSION

### A.    Voluntariness of the Plea

Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

A prisoner may also challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to a challenge to a guilty plea based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). Under *Strickland*, a prisoner asserting a claim of ineffective assistance of counsel must show that (1) his defense counsel's performance fell below an objective standard of reasonableness; and (2) he was prejudiced by the attorney's error. *Strickland*, 466 U.S. at 680, 691–92 (1984); *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009). In the context of a challenge to the entry of a guilty plea on the basis of counsel's ineffectiveness, the first part of *Strickland* remains intact: the prisoner must show that counsel's advice did not fall within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884. The "prejudice" inquiry, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the prisoner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

The movant here states that his plea was not knowingly and voluntarily entered "due to counsel's

misrepresentations and ineffectiveness of what petitioner's sentence would be. Had Mr. Smith been correctly informed of his sentence and the collateral consequences associated therewith, he would not have pled guilty and would have insisted on going to trial." (2255 Motion, ECF No. 1, at 5–6.) In his reply brief, he elaborates by stating explicitly that

> Petitioner's defense counsel informed Mr. Smith that he would receive the safety valve if he pled guilty. Had Petitioner known that he would not receive the safety valve, Mr. Smith would not have pled guilty and would have insisted on going to trial. This false presupposition about the safety valve renders Mr. Smith's plea unknowing and voluntary, as he was not properly informed of all the direct consequences of his plea as the Constitution requires.

(Reply Brief, ECF No. 20, at 2.)[1]

The record in this case, however, conclusively refutes this assertion and establishes that the plea was knowing and voluntary. The plea petition itself, as noted above, expressly (and correctly) identified the expected guideline range and noted that the mandatory minimum of 60 months of incarceration would trump the guideline range unless the safety-valve provision in U.S.S.G. § 5C1.2 applied. The plea agreement did not include any agreement regarding sentencing or application of the safety valve. The court, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, examined Mr. Smith as to his competence to enter a plea, his understanding of the collateral consequences of pleading guilty, and his understanding of the plea petition and plea agreement. In conducting the Rule 11 colloquy, the court reviewed all the pertinent terms of the plea agreement with the movant, and Mr. Smith verbally confirmed that he understood (1) that his attorney's estimate as to what his sentence would be was simply an estimate and was not binding on the court; (2) that the application of the safety valve was a contested issue; and (3) that the court would make the final decision on sentencing and the application of the safety valve. Mr. Smith assured the court of his competence and understanding and that his plea was knowing and voluntary.

"Solemn declarations in open court" that a plea is knowing, voluntary, and intelligent "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Ramos v. Rogers*, 170 F.3d

---

[1] Insofar as Smith may be attempting to assert that his plea was involuntary based on counsel's failure to inform him of other collateral consequences of pleading guilty, the claim fails because it is insufficiently specific. Moreover, the plea colloquy in this case clearly establishes that the movant was informed of the collateral consequences of entering a guilty plea.

560, 565 (6th Cir. 1999) ("[A] claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker*[2] when the court conducts a proper, clear, and thorough plea colloquy."). Reliance on the defendant's after-the-fact claims of misrepresentation and a lack of understanding instead of the record of plea proceedings would "render[] the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statement during the plea colloquy . . . indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). The plea colloquy process exists in part to prevent defendants from making such claims. *Id.* "'Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.'" *Id.* (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).

Smith is not entitled to relief on the basis of this claim, because the court scrupulously followed the required procedure during the plea colloquy, and Mr. Smith is bound by his statements in response to the court's questions. The record clearly establishes that the plea in this case was knowing and voluntary, as a result of which Mr. Smith cannot establish that his attorney was ineffective for failing to ensure that the plea was, in fact, fully knowing and voluntary. The movant is not entitled to relief on the basis of this claim.

---

[2] In *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986), a petitioner alleged that his plea was not knowing and voluntary because his attorney had promised him that the trial court would release him on "supershock probation" after one year in prison, but this promise was not reflected in the plea agreement. The Sixth Circuit held that

> where the court has scrupulously followed the required [plea colloquy] procedure, the defendant is bound by his statements in response to that court's inquiry. Plea bargaining is an essential component of the administration of justice. Properly administered, it is to be encouraged. It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, a plea bargain itself is contractual in nature and subject to contract-law standards. To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court . . . .

*Id.* at 90 (citations and quotation marks omitted).

**B.      Other Ineffective-Assistance Claims**

As indicated above, to establish a claim of ineffective assistance of counsel, a § 2255 movant must show that (1) that his defense counsel's performance fell below an objective standard of reasonableness; and (2) he was prejudiced by the attorney's error. *Strickland*, 466 U.S. at 680, 691–92. The movant bears the burden of establishing both prongs of the *Strickland* test. *United States v. Cox*, 826 F.2d 1518, 1525 (6th Cir. 1987).

In regard to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91 (1955)); *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). To establish prejudice under *Strickland*, the petitioner has the burden of establishing a reasonable probability that, but for counsel's alleged poor performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694.

Aside from the claim raised in connection with Smith's plea, rejected above, the movant's ineffective-assistance claims largely relate to counsel's conduct at sentencing: that counsel was ineffective for (1) failing to move for the application of the safety-valve provision in U.S.S.G. 5C1.2; (2) failing to move for a continuance of the sentencing hearing; (3) failing to object to the introduction of hearsay testimony at the sentencing hearing, in the form of unsigned letters; (4) failing to object to the prosecution's violation of the plea agreement during sentencing; and (5) failing to object to the sentencing enhancements in the PSR. The claims are without merit, for the reasons discussed below.

*Claim 1*

The movant asserts that his counsel was ineffective for failing to move for the application of the safety-valve provision. In fact, defense counsel advocated strongly for application of the safety-valve provision at his client's sentencing and in the briefs submitted in anticipation of sentencing. In addition, defense counsel went so far as to file a sealed motion in which he argued that the court should depart from the guidelines and sentence Smith to time served and probation (ECF No. 85). The court denied application of the safety valve, as discussed below, but his counsel was not ineffective for failing to move for its application. The movant is not entitled to relief on the basis of this claim.

***Claim 2***

This single claim actually encompasses several distinct claims: that defense counsel was ineffective for not obtaining the government's witness list and exhibits sooner than the day of the sentencing, and that counsel was ineffective for failing to move for a continuance of the sentencing hearing specifically in order to subpoena the "proper witnesses/evidence to negate [the] veracity [of the government's exhibits]." (ECF No. 1, at 5.) These claims, together, amount to a claim that defense counsel was ineffective for failing to procure application of the safety valve for sentencing purposes. Mr. Smith specifically contests the introduction into evidence of three "hearsay" letters introduced by the government during sentencing, and asserts that "[a] minimal investigation and subpoenaing the alleged victims would have easily proved their inaccuracy." (*Id.* at 6.)

First, the movant's assertion that counsel was ineffective for failing to obtain the government's witness and exhibit lists sooner than the day of sentencing is defeated by the fact that the movant was not entitled to receive a witness and exhibit list in advance of the sentencing hearing. *Cf. United States v. Polk*, 715 F.3d 238, 249 (8th Cir. 2013) ("A federal criminal defendant generally has no right to know about government witnesses prior to trial." (citing 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a)(2)); *United States v. Jones*, 469 F. App'x 175, 180 (4th Cir. 2012) (noting that defendants in a non-capital case are not entitled to pretrial disclosure of witness or exhibit list); *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) (noting that a criminal defendant is ordinarily not entitled to a witness list from the government); *United States v. Presser*, 84 F.2d 1275, 1285 n.12 ("[I]n most criminal prosecutions, the *Brady* rule, Rule 16 and the Jencks Act [18 U.S.C. § 3500], exhaust the universe of discovery to which the defendant is entitled."). Therefore, Mr. Smith necessarily cannot show that his counsel was ineffective for failing to obtain this information in advance of his sentencing hearing.

Regarding his claim that counsel was ineffective for failing to move for a continuance in order to subpoena witnesses to testify at the sentencing hearing to rebut the government's evidence, Mr. Smith specifically objects to the introduction of "unsigned, undated letters from (a) Heather Tittle, (b) Jerry Smith, (c) Brian Smith, and (d) Jennifer Smith" during sentencing. (ECF No. 20, at 8–9.) He claims the letters were unverified and "full of hearsay that is easily discredited with a bare minimum of investigation," and that his attorney could and should have objected to the admission of these letters into evidence and

"called witnesses to debunk their veracity and authenticity." (*Id.* at 9.) He also asserts his belief that "these letters were a major component to denying [him] the safety valve." (*Id.*)

In fact, the only documents introduced into evidence during the sentencing hearing by the government, other than letters written by Mr. Smith and a recorded statement and transcript of a conversation in which Mr. Smith participated,[3] were two letters by Heather Tittle and a written statement by Jennifer Smith. These letters were not inadmissible as hearsay, because the Federal Rules of Evidence do not apply to sentencing hearings. Fed. R. Evid. 1101(d)(3); *see also United States v. Darwich*, 337 F.3d 645, 656 (6th Cir. 2003) (hearsay is admissible at sentencing hearings as long as it has some "minimum indicia of reliability"). Because both Ms. Tittle and Ms. Smith testified consistently with their written statements during the sentencing hearing and were subject to cross-examination, these letters clearly had some "minimum indicia of reliability." Counsel, therefore, was not ineffective for failing to object to the admission of these letters into evidence at the hearing.

More importantly, the court did not rely on any of the writings to which Mr. Smith objects in concluding that Mr. Smith did not qualify for the safety valve. In other words, there was no need to call witnesses to "negate the veracity" of letters to which Mr. Smith objects, because the court did not rely on those writings. Thus, although the court is generally inclined to grant a continuance if necessary to allow a defendant time to muster rebuttal evidence, the movant has not identified any rebuttal evidence that would have been effective to refute or counter the credible evidence of threats presented by the government contained in Mr. Smith's own words and writings, as discussed below. Moreover, the defendant testified at length during the sentencing hearing and was able to proffer whatever mitigation evidence he wished. For both of these reasons, the movant cannot show that he was prejudiced by his attorney's failure to move for a continuance that would have allowed him to present rebuttal evidence.

The crux of the movant's claim, of course, is that defense counsel was ineffective for failing to persuade the court that it was appropriate to sentence Mr. Smith under the safety-valve provision. Section 5C1.2(a) of the Sentencing Guidelines, the "safety-valve" provision, directs a sentencing court to

---

[3] Mr. Smith does not object to the introduction of his own letters into evidence, and he expressly admitted during the sentencing hearing that the letters introduced by the government as Exhibits 2 and 8 were in fact written by him. (*See* Sentencing Hr'g Tr. at 42, 53.)

sentence without regard to a statutory minimum for certain drug-related offenses if five criteria are met. This provision was originally enacted as part of the Violent Crime Control and Law Enforcement Act of 1994 and is codified at 18 U.S.C. § 3553(f). *See* U.S.S.G. § 5C1.2 background note (2009). The five conditions are:

> (1) the defendant does not have more than 1 criminal history point . . . ;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. . . .

28 U.S.C. § 3553(f); U.S.S.G. 5C1.2(a). The Sixth Circuit has held that unless all five conditions of the safety-valve guideline are met, district courts do not have discretion in applying an exception to the statutory minimum. Instead, a defendant must meet "each and every criterion" in order to be eligible for safety-valve relief. *United States v. Scruggs*, 436 F. App'x 617, 620 (6th Cir. 2011) (quoting *United States v. Bazel*, 80 F.3d 1140, 1142 (6th Cir. 1996)). The defendant has the burden of establishing each condition of the safety valve. *United States v. Pena*, 598 F.3d 289, 293 (6th Cir. 2010).

In this case, there is no dispute that Smith met the first and third conditions. However, as the court explained in its findings of fact and conclusions of law at the sentencing hearing, Mr. Smith did not satisfy the second condition, because the record established that he had engaged in credible threats of violence and that he possessed a firearm in connection with the offense of conviction. In reaching that finding, the court relied primarily upon the testimony of Mr. Smith's neighbor John Redman, which the movant has not attempted to refute. Mr. Redman testified during the hearing that Mr. Smith told him he thought someone had stolen some of his marijuana and that he was sleeping in his marijuana patch with a shotgun to catch anyone who came to steal more. The court found that Mr. Smith's statement to Mr. Redman qualified both as a credible threat of violence and showed possession of a firearm in connection

with the offense of conviction. As the court stated then, "This is the typical protecting your drugs with a gun: he is sleeping in his marijuana patch." (Case No. 3:11-cr-0003, ECF No. 106, Sentencing Hr'g Tr. at 206:2–3.) Because all five conditions of the § 5C1.2 must be met for the safety valve to apply, *Bazel*, 80 F.3d at 1142, Mr. Redman's testimony alone provided sufficient evidence to preclude application of the safety valve.

However, in addition to this very clear example of why the second condition was not met, the court also took into account the transcript of a conversation between Mr. Smith and his nephew, Brian Smith, which was recorded by Brian's wife at that time, Jennifer Smith. The conversation took place after the government's seizure of Mr. Smith's marijuana crop but prior to his arrest. In this conversation, the movant, James Smith, stated that he did not want to lose his farm and threatened an "all-out war." The court found that Mr. Smith's statement in the recording also constituted a credible threat of violence in connection with the offense. The transcript of the tape-recorded conversation by itself too would have been sufficient to establish that the second condition was not met.

The court also found credible and relevant the in-court testimony of Heather Tittle regarding Mr. Smith's threatening conduct toward her and Mr. Smith's brother, Jerry Smith. Ms. Tittle testified that, prior to the seizure of Mr. Smith's marijuana crop, the movant brought over a letter to his brother. In delivering the letter, he grabbed Ms. Tittle face and stated, "If I get caught, it's the same as a manslaughter charge." The court understood this and other statements made at the same time to constitute a credible threat of violence that occurred in connection with the offense.

Besides finding that the movant did not meet the second condition of the safety valve, the court found that the fifth condition was not met, because Mr. Smith had not carried his burden of "truthfully provid[ing] to the Government all information and evidence the defendant has concerning the offense." U.S.S.G. § 5C1.2(a)(5). The government established that Mr. Smith had expressly refused to discuss with law enforcement the involvement of Troy Valdivia in his marijuana plantation. Specifically, the government showed that, when asked about whether Troy Valdivia had assisted him with his marijuana crop, Mr.

Smith expressly refused to comment on Mr. Valdivia's involvement.[4] Although the government made other arguments in support of its contention that condition five was not met, the court was persuaded by Mr. Smith's own words that he had not been completely forthcoming about the involvement of others in his operation. The court again notes, however, that the finding that the fifth condition was not met was not necessary to the court's determination that Mr. Smith was not eligible for the safety valve, since the court had already determined that condition two was not met.

The court has considered all of the new material submitted by the movant as well as the arguments in his reply brief but concludes that they are immaterial and that the introduction of additional witnesses and evidence would not have made a difference in the court's ruling in this case. As set forth above, the court did not rely on the letters to which the movant objects to reach the conclusion that the safety valve did not apply, and the evidence upon which the court did rely to find that the safety valve did not apply has not been challenged by Mr. Smith. Regardless of whether his trial counsel could have done more to contest the evidence presented at the sentencing hearing or could have called additional witnesses to challenge the credibility of the government's witnesses, it would not have made a difference in the court's ultimate conclusion that Mr. Smith did not qualify for application of the safety valve. In sum, the fact that the court found that the safety-valve provision did not apply was no reflection on the skill of Mr. Smith's counsel. The court finds that defense counsel was a tireless, creative, and very effective advocate for Mr. Smith throughout his representation. Rather, the movant has only his own behavior to blame for the fact that he was not eligible for the safety-valve provision.

The movant has not established that counsel was ineffective or that he was prejudiced by counsel's failure to obtain the government's witness and exhibit list in advance, to move for a continuance of the sentencing hearing, or to introduce additional witnesses and exhibits. The movant is not entitled to relief on the basis of this claim.

### Claim 3

The movant asserts that his counsel was ineffective for failing to object to the introduction of

---

[4] In contrast, Mr. Smith insisted that his neighbor Ben Hall did not know about his operation, but then refused to discuss Troy Valdivia's involvement. (Sentencing Hr'g Tr. at 96, citing Def.'s Ex. 6, DEA 6 Report, at page 23.)

hearsay testimony and the unsigned letters of Brian Smith, Jennifer Smith, Jerry Smith and Heather Tittle at the sentencing hearing. As set forth above, the court did not rely on these documents at sentencing, so the movant was not prejudiced by their introduction. Moreover, even if counsel had raised an objection, it is unlikely that the court would have excluded the evidence. The law is clear that a court may consider hearsay evidence during a sentencing hearing as long as it has some "minimum indicia of reliability." *Darwich*, 337 F.3d at 656.

The movant is not entitled to relief on the basis of this claim.

### Claim 4

The movant asserts that his defense counsel was ineffective for failing to object to the government's violation of the contractual plea agreement. He does not, however, identify in what way the government violated the plea agreement. On this basis alone, the movant's claim is facially insufficient.

Construing the habeas motion liberally, the court understands that the movant may be attempting to assert that the government violated the plea agreement by introducing hearsay and the unsigned letters during the sentencing hearing. The plea agreement did not contain any agreement regarding sentencing or any restrictions on what evidence the United States was permitted to present at the sentencing hearing. Consequently, it is clear that the prosecution did not breach the plea agreement by introducing the evidence to which the plaintiff objects.

To the extent the movant intends to argue that the prosecution violated the plea agreement by refusing to recommend application of the safety-valve guideline or to acknowledge that Smith provided substantial assistance, the claim fails because the government incurred no obligation under the plea agreement to recommend application of the safety valve or to refrain from arguing that Smith had not provided substantial assistance to the government. Again, the plea agreement did not include any agreement with regard to sentencing. The United States did not violate the plea agreement by advocating for a minimum 60-month sentence, and defense counsel was not ineffective for failing to raise an objection on that basis.

It also appears, based on the movant's discussion of his claim of prosecutorial misconduct, that this claim might be predicated on the government's purportedly attempting to amend the indictment to increase the quantity of marijuana that the movant was charged with manufacturing. The movant states:

"Based on DEA evidence and extensive photographic evidence the prosecution knew beyond shadow of a doubt the correct quantity of marijuana plants, but they continuously attempted to have it amended by a plant count three times the correct one." (Habeas Petition, ECF No. 1, at 7.) Nothing was "amended," and the government did not withdraw its agreement to allow the defendant to plead to the lesser included offense of possessing with intent to distribute 100 or more marijuana plants, as opposed to the offense of possessing 1000 or more marijuana plants, as originally charged in the indictment.

The movant is not entitled to relief on the basis of this claim.

### Claim 5

The PSR submitted in this case calculated an advisory guideline sentencing range of 30 to 37 months. This calculation was premised on a base offense level of 18; a 2-level increase for the defendant's leadership role in the criminal enterprise; a 2-level increase for obstruction of justice; and a 3-level decrease for acceptance of responsibility, resulting in a total offense level of 19. (PSR, ECF No. 99, at 7.) The PSR also recognized, however, that the advisory guideline range was trumped by the five-year mandatory minimum sentence established by 21 U.S.C. § 841(b)(1)(B). The court sentenced Smith to the statutory mandatory minimum sentence.

The movant asserts that his counsel was ineffective for failing to object to the sentencing enhancements in the PSR. In fact, defense counsel did object to the sentencing enhancements in the PSR that were based on obstruction of justice and the defendant's having a leadership role in the criminal endeavor. (Def.'s Sentencing Position, ECF No. 83.) Counsel cannot be deemed ineffective for failing to raise these arguments, because he did in fact make them.

More to the point, because the court found that Smith was subject to the statutory mandatory minimum, which trumped the guideline range, the issues of the guideline enhancements for obstruction of justice or for the defendant's leadership role in the criminal endeavor were rendered moot. The movant cannot establish either that his counsel was ineffective or that he was prejudiced by any alleged failure on the part of his attorney.

### C.        Prosecutorial Misconduct

For a habeas corpus motion to state a cognizable claim based on prosecutorial misconduct, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."

*Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation omitted). In this case, the alleged prosecutorial misconduct purportedly occurred during sentencing and must be considered within that context.

The movant alleges that the prosecutor in this case engaged in prosecutorial misconduct in that she (a) failed to disclose witnesses until the day of the sentencing; (b) failed to correct the quantity of marijuana plants found on Smith's property; and (c) failed to disclose four unsigned and/or undated defamatory letters until just before sentencing, three of which were entered into evidence for enhancement purposes. None of these claims has any merit as a factual or legal matter.

First, as discussed above, the prosecutor had no obligation to disclose the witnesses she intended to call at the sentencing hearing in advance of that hearing. *Cf. United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) (noting that a criminal defendant is ordinarily not entitled to a witness list from the government). Second, Smith entered into a plea agreement in which he acknowledged that he was guilty of possessing with intent to distribute 100 or more marijuana plants. His sentence was based on his plea, not on any pre- or post-plea representations that the government might have made regarding the quantity of plants involved. Thus, even if the prosecutor misrepresented the number of plants involved, the movant was not in any way prejudiced by such misrepresentation.

Regarding the movant's claim that the government introduced unsigned letters into evidence at the sentencing hearing, the court has already found, above, that the letters and writings that were introduced were properly admissible. Moreover, as discussed during the sentencing hearing, the court did not rely on any purportedly unsigned letters in sentencing Mr. Smith. Instead, the court relied on the testimony of John Redman and Heather Tittle, the transcript of the conversation between Mr. Smith and his nephew Brian, and Mr. Smith's own letters to find that the safety-valve guideline was inapplicable.

The movant has not established that the government engaged in prosecutorial misconduct at all, much less misconduct of sufficient significance to result in the denial of his right to due process and a fair sentence. This claim too is without merit.

### D.        Abuse of Discretion by the Court

The movant states in his motion:

(1) During sentencing proceedings the District Court allowed prosecution witnesses to testify for enhancement purposes, but refused to allow defense witnesses to testify for mitigating purposes (and application of the Safety Valve).

> (2) The District Court admitted into evidence three of four unsigned letters into evidence without ascertaining their veracity. Plus they violated the Rules of Evidence on relevance and hearsay.

(2255 Motion, ECF No. 1, at 8–9.) He asserts that in making these evidentiary rulings the court abused its discretion.

As an initial matter, the court finds that objections regarding the introduction of evidence at a sentencing hearing could have been, but were not, raised in a direct appeal. Moreover, they do not state a claim of constitutional dimension or suggest that the proceedings were fundamentally unfair. They are therefore not cognizable on post-conviction review. *Cf. Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996) ("The standard, then, appears to be that nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process."). Even if the claim were properly brought, the court has already determined that the writings introduced by the government were properly entered into evidence.

To the extent the movant intends to argue that the court should have permitted him to present rebuttal evidence to refute the government's evidence, as discussed above, Mr. Smith has not identified any evidence that would have effectively refuted the other evidence in the record establishing that he was not eligible to be sentenced under the safety-valve guideline.

The movant is not entitled to relief on the basis of this claim.

**E.      Failure to Receive Downward Departure**

The movant characterizes his final ground for relief in his § 2255 motion as based on "Failure to receive downward departure for substantial assistance petitioner provided to the government." (ECF No. 1, at 10.) In support of this claim he states:

> Mr. Smith gave specific details to the government about his nephew's involvement in stealing half the crop of marijuana, which was later corroborated by third-party testimony, and the government could have recovered over a hundred fifty plants had it acted upon the information. Instead they chose not to act upon the information and allowed the marijuana to be disseminated to the public.

(*Id.*) He further elaborates upon this claim in his reply brief.

The constitutional basis for this claim is not clear. Insofar as the movant intends to argue that the government violated some obligation to him by failing to follow up on his tip about his nephew's alleged

theft of his marijuana crop, the movant fails to state a cognizable claim for habeas relief.

To the extent the movant intends to argue that his counsel was ineffective for failing to establish that Mr. Smiths' advisory sentencing guideline range should have been subject to a downward adjustment for substantial assistance, this claim fails because, even if the movant could show that his counsel's performance was deficient, he cannot show that he was prejudiced by the alleged failure. A reduction in his total offense level under the sentencing guidelines would not have helped him avoid application of the statutory mandatory minimum sentence, as discussed above.

If the movant intends to argue that that the court erred in failing to conclude that Mr. Smith's information about his nephew qualified him as eligible for the safety-valve, this contention is without merit. As discussed above, the government established that Mr. Smith had not "truthfully provided . . . all information and evidence [he had] concerning the offense" of conviction. U.S.S.G. 5C1.2(a)(5). The fact that Mr. Smith provided *some* information does not change that fact. Mr. Smith was not eligible for the safety valve. Further, even if the court concluded that condition 5 of the safety valve were met, Mr. Smith still would remain ineligible because he did not meet condition 2.

The movant is not entitled to relief on the basis of this claim.

## IV. CONCLUSION

Mr. Smith's motion will be denied and this matter dismissed for the reasons set forth herein.

The court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 movant. Rule 11(a), Rules Gov'g § 2255 Proceedings. The movant may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the movant "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA must "indicate which specific issue or issues satisfy the [required] showing . . . ." 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the movant demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

In this matter, Mr. Smith raises claims of ineffective assistance of counsel and other claims in the context of a plea agreement. However, the record establishes that his counsel's performance was not deficient, that the plea was voluntary and knowing, and that the movant is not entitled to relief on any of the grounds asserted. Because the issues raised in Mr. Smith's motion do not merit further attention, the court will deny a COA. The movant may, however, seek a COA directly from the Sixth Circuit Court of Appeals.

An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge